RICARDO ESTREMERA MERCADO, peticionario, *v.* JAMES M. JONES, JEFE DE LA PENITENCIARÍA INSULAR, demandado.

Número 460.

*Sometido:* 6 de noviembre de 1952. *Resuelto:* 12 de diciembre de 1952.

203

Ricardo Estremera Mercado, pro se; Hon. Procurador General Víctor Gutiérrez Franqui y J. Rivera Barreras, Fiscal del Tribunal Supremo, abogados del demandado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El día 23 de diciembre de 1946 el peticionario Ricardo Estremera Mercado fué condenado a sufrir la pena de dos a ocho años de presidio en virtud de una sentencia dictada por el antiguo Tribunal de Distrito de San Juan, habiéndose él declarado culpable de un delito de falsa representación. El día 28 de marzo de 1950 el mismo tribunal dictó dos sentencias, por dos delitos de falsificación, condenando al peticionario a cumplir la pena de dos a ocho años en cada uno de esos dos casos, concurrentemente con el cumplimiento de la pena que le había sido impuesta el día 23 de diciembre de 1946. Al cometer el acusado los delitos por los cuales fué sentenciado el 28 de marzo de 1950 él estaba en libertad bajo palabra bajo la primera sentencia. El día 27 de febrero de 1951 el Tribunal de San Juan, motu proprio, hizo comparecer ante dicho tribunal al peticionario, representado por un abogado, y en corte abierta la corte modificó las sentencias del 28 de marzo de 1950, disponiendo que las mismas fuesen cumplidas concurrentemente entre sí después que el convicto hubiese extinguido la de dos a ocho años de presidio que le fuera impuesta el día 23 de diciembre de 1946. El tribunal a quo modificó las sentencias en virtud de su interpretación

de lo dispuesto en el inciso (*e*) de la sección 3 de la Ley núm. 108 aprobada el 12 de mayo de 1943 (pág. 305.) Dicha sección 3 dispone, en parte, lo siguiente:

"Sección 3.—No podrán cumplirse concurrentemente los términos de prisión que deban imponerse en los siguientes casos:

"· · · · · · ·

"(*d*) cuando el reo cometiere el delito mientras estuviere recluído en una institución penal o en cumplimiento de cualquier sentencia;

"(*e*) cuando cometiere delito mientras el reo estuviere en libertad bajo palabra o bajo indulto condicional o bajo cualquier medida de liberación condicional en que se considere cumpliendo la sentencia impuesta por el tribunal."

Al día siguiente, o sea, el día 28 de febrero de 1951 el mismo tribunal sentenciador reconsideró de nuevo las sentencias dictadas el día 28 de marzo de 1950, dejándolas sin efecto en cuanto a la pena impuesta únicamente de dos a ocho años de presidio y modificándolas en el sentido de condenar al peticionario a sufrir la pena de uno a tres años de presidio en cada uno de esos dos casos. Como hemos visto, en el día anterior, la modificación se limitó al pronunciamiento de que ambas sentencias se cumpliesen concurrentemente entre sí, pero no concurrentemente con la primera sentencia del 23 de diciembre de 1946, ya que las dos sentencias posteriores se cumplirían concurrentemente después de haberse terminado el cumplimiento de la pena en cuanto a la sentencia del 23 de diciembre de 1946. Con la sentencia del 27 de febrero de 1951 quedó en pie el término de dos a ocho años de presidio en cada caso, según fué señalado en las sentencias de 28 de marzo de 1950, sin embargo, en la modificación de sentencias verificada el día 28 de febrero de 1951 se redujeron las penas a dos términos de uno a tres años de presidio en cada caso. El acusado no estaba presente cuando se modificó la sentencia el 28 de febrero de 1951, pero estaba representado por su abogado, quien renunció al dere-

cho de que el acusado, y peticionario en este caso, estuviese en corte.

El peticionario ha acudido a este Tribunal con una petición de *mandamus* solicitando que se anulen las sentencias modificatorias del 27 y 28 de febrero de 1951 y que se ordene al recurrido Alcaide de la Penitenciaría Insular a que liquide el cumplimiento a base de las sentencias dictadas el 28 de marzo de 1950 y no a base de las sentencias dictadas el 27 y el 28 de febrero de 1951.

■■ Como surge de los hechos anteriormente relacionados, el tribunal sentenciador estableció, en los días 27 y 28 de febrero de 1951, dos modificaciones a las sentencias del 28 de marzo de 1950, una, en presencia del acusado y de su abogado, eliminando la naturaleza concurrente del cumplimiento de ambas sentencias con relación al cumplimiento de la sentencia de 23 de diciembre de 1946 y disponiendo que las dos sentencias de 28 de marzo de 1950, aunque concurrentes entre sí en cuanto a su cumplimiento, se empezarían a cumplir al extinguirse el cumplimiento de la sentencia del 23 de diciembre de 1946, y no en forma concurrente con esta última sentencia, y las modificó, al día siguiente y en ausencia del acusado, reduciendo la pena en cuanto a las dos sentencias de marzo 28 de 1950 de dos a ocho años a una pena de uno a tres años en cada caso. Con respecto a esta última modificación, es indudable que una sentencia en delitos graves no puede dictarse válidamente en ausencia del acusado. Artículo 311, Código Enjuiciamiento Criminal; *Price* v. *Zerbst*, 268 Fed.72; *Lewis* v. *United States*, 146 U.S. 370; *Frank* v. *Mangum*, 237 U.S. 309, 341; *Siegel* v. *State*, 229 N.W. 44; *People* v. *Fields*, (Cal.) 198 P.2d 104; 15 Am. Jur. 113, sec. 455; *Cf. Colón, Ex parte* v. *El Pueblo*, 29 D.P.R. 117; *Pueblo* v. *Ortiz*, 57 D.P.R. 469; *Pueblo* v. *Meléndez*, 47 D.P.R. 842; *Pueblo* v. *Texidor*, 52 D.P.R. 681. Véase además la monografía de 6 A.L.R. 997 y, por analogía, véase el caso de *Ruiz* v. *Rivera, Jefe del Presidio*, 71 D.P.R. 534, en cuanto

a la necesidad de asistencia de abogado en el pronunciamiento de la sentencia. Sin embargo, no debe requerirse la presencia del acusado en el acto de modificación de una sentencia que resulte ser en beneficio del acusado, al efectuar una reducción en la pena, ya que ello no perjudica sus derechos. *Cf. Cross* v. *North Carolina*, 132 U.S. 131, 140; *Waldon* v. *United States*, 84 F. Supp. 449; *Garrison* v. *Reeves*, 116 F.2d 978. El peticionario estaba presente cuando se modificaron las sentencias en forma perjudicial y gravosa para él, mediante la sustitución del carácter concurrente del cumplimiento de las sentencias de 28 de marzo de 1950 con relación al cumplimiento de la sentencia de 23 de diciembre de 1946, por un cumplimiento consecutivo con relación a esta última sentencia. Lo que se llevó a cabo en ausencia del acusado se refirió exclusivamente a una reducción en la pena. Por lo tanto, la controversia envuelta en este caso debe limitarse a la validez de la modificación de las sentencias de 28 de marzo de 1950, independientemente de la ausencia del acusado en cuanto al procedimiento seguido el 28 de febrero de 1951.

■ Carece de validez una modificación de sentencia que implique un aumento en el castigo o en la pena impuesta a un acusado especialmente cuando este último ha empezado a cumplir la sentencia original. *Ex parte Lange*, 85 U.S. 163; *United States* v. *Benz*, 282 U.S. 304, 307; *Roberts* v. *United States*, 320 U.S. 264, 266; *Wilson* v. *Bell*, 137 F.2d 716; 15 Am. Jur. 128, 130; 168 A.L.R. 712 y casos allí citados; 24 C.J.S. 118, 119. Si en dos sentencias se ha determinado que ambas han de ser cumplidas concurrentemente, carece de validez una modificación posterior de ambas sentencias al efecto de que ellas se cumplan en forma consecutiva, ya que ello envuelve un aumento en el castigo o en la pena. *People ex rel Gerbino* v. *Ashworth*, 267 App. Div. 579, y véanse los casos citados en 168 A.L.R. 712, 716. Sin embargo, si las sentencias originales, o las penas impuestas por ellas son

nulas o ilegales, ellas pueden ser modificadas posteriormente aun aumentando el castigo o la pena. 168 A.L.R. 719; 24 C.J.S. 120, 121; *King* v. *United States*, 98 F.2d 291; 15 Am. Jur. 132. Una actuación judicial inválida no debe conllevar consecuencias legales y el orden público debe permitir que se remedie en forma legal una sentencia que sea contraria a la ley. Debe protegerse en lo más posible el derecho de un acusado a no ser expuesto dos veces por el mismo delito, pero un acusado no debe estar en posición de recibir beneficios a base de un pronunciamiento judicial que sea contrario a la ley. En *Bozza* v. *United States*, 330 U.S. 160, 166, 167, el acusado había sido convicto de un delito que envolvía un mínimo mandatorio de multa y prisión. Él fué sentenciado a prisión solamente y se le puso en custodia provisional hasta ser transportado a la penitenciaría. Cinco horas más tarde el juez lo llamó de nuevo al percatarse de que él había actuado en forma contraria a la ley y lo sentenció a un término de prisión y a pagar una multa. Se resolvió que esta modificación de la sentencia no constituía una doble exposición por el mismo delito en forma contraria a la Constitución. En la opinión emitida por el Juez Black, la Corte Suprema de los Estados Unidos dijo lo siguiente:

". . . De no poder corregirse este error que fué cometido por inadvertencia en la forma utilizada por el tribunal sentenciador, entonces nunca se podría imponer una sentencia válida y ejecutable. . . Esta Corte ha rechazado la 'doctrina de que un prisionero, cuya culpabilidad ha sido establecida mediante un veredicto reglamentario, pueda escapar absolutamente de un castigo porque la corte cometió un error al dictar la sentencia' . . . La Constitución no requiere que el acto de pronunciar una sentencia sea un juego en que un movimiento equivocado del juez implique inmunidad para el prisionero. . . En este caso la corte 'solamente dejó sin efecto lo que ella no tenía autoridad para hacer anteriormente y sustituyó los pronunciamientos requeridos por la ley en cuanto a lo que debía hacerse después de la convicción del ofensor' . . . Ella no puso al peticionario dos veces en exposición por el mismo delito.

La sentencia tal como fué corregida imponía un castigo válido por la comisión de un crimen en sustitución de un castigo inválido por tal ofensa."

■■ Si una sentencia es parcialmente nula o ilegal, aquella parte que sea contraria a una disposición de la ley puede modificarse posteriormente. La parte de la sentencia que sea ilegal debe ser considerada como superflua (*surplusage*) y debe ser ignorada, debiendo ser sustituída por lo que dispone la ley sobre el particular ya que las disposiciones legales prevalecientes al tiempo de haberse dictado la sentencia deben ser consideradas como si fuesen parte de la sentencia, conllevando ello la facultad válida de un tribunal de modificar la sentencia de acuerdo con la ley. 24 C.J.S. 111, 116; *In re Clark*, 163 P.2d 577, 581, 582; *Wilson* v. *Bell*, supra; *Gossett* v. *Smith*, 208 P.2d 870; *Iron Bear* v. *Jones*, 32 N.W.2d 125; *State* v. *Feeney*, 226 S.W.2d 688.

Por analogía, en el caso de *People* v. *Holman*, 164 P.2d 297, el tribunal sentenciador actuó en forma ilegal al dictar sentencias a ser cumplidas consecutivamente, cuando el Código Penal de California requería que en la situación envuelta en ese caso las sentencias se dictasen concurrentemente. Se resolvió que aquella parte de la sentencia que se refería al cumplimiento consecutivo debía ser considerada como superflua (*surplusage*) y podía ser corregida mediante una nueva sentencia.

En el caso de autos aquella parte de las sentencias dictadas el 28 de marzo de 1950 que disponía que esas sentencias se cumplirían concurrentemente con la dictada el 23 de diciembre de 1946 era completamente nula y contraria a la sección 3 de la Ley núm. 108 de 12 de mayo de 1943, ya transcrita, ya que al cometer el peticionario los delitos que le sirvieron de base a esas dos sentencias de 28 de marzo de 1951, el peticionario estaba en libertad bajo palabra y, por lo tanto, las dos sentencias no podían cumplirse concurrentemente con el término de prisión que él estaba cumpliendo bajo la primera sentencia de 23 de diciembre de

1946. La ley exigía que el peticionario cumpliese esas dos sentencias de marzo de 1950 después de haberse extinguido el término de prisión envuelto en la primera sentencia, o sea, en forma consecutiva a esa sentencia de diciembre de 1946. El tribunal sentenciador tenía el poder válido para modificar esas dos sentencias en forma que ellas se ajustasen a la ley y así lo hizo en este caso. Naturalmente, el tribunal a quo también tenía la facultad para disponer que las dos sentencias de marzo de 1950 se cumpliesen concurrentemente entre sí, aunque no concurrentemente con relación a la sentencia de diciembre de 1946.

Actuó también dentro de sus facultades y poderes legales el tribunal a quo al reducir los términos de prisión envueltos en las dos sentencias de marzo de 1950. En términos generales existe un conflicto en la jurisprudencia en cuanto a la facultad de un tribunal para modificar sus sentencias, en el sentido de reducir la pena envuelta. La Corte Suprema de los Estados Unidos y la Corte Federal permiten y reconocen tal procedimiento. *United States* v. *Benz*, supra; 168 A.L.R. 714. Pero la gran mayoría de las autoridades estaduales, incluyendo a California, sostienen la regla de que una sentencia válida no puede ser modificada aun reduciendo la pena. 168 A.L.R. 707. En California esta regla se ha aplicado hasta el punto de prohibir un cambio en la naturaleza del cumplimiento concurrente o consecutivo de las sentencias. *In re Johannes*, 213 Cal. 125; *Albori* v. *Sykes*, 65 P.2d 84; *Ex parte Pedrini*, 206 P.2d 699, 702. Sin embargo, aun la regla adoptada por la mayoría de las jurisdicciones estaduales es aplicable solamente a un caso en que se haya dictado una sentencia válida. Si la sentencia es nula o ilegal, total o parcialmente, la corte puede modificarla reduciendo la pena. 168 A.L.R. 719 *et seq.*, en donde también se citan casos de California estableciendo esa excepción. Como hemos visto, en el caso de autos las dos sentencias del 28 de marzo de 1950 eran contrarias a la ley y, por lo tanto, el término de prisión podía ser modi-

ficado. Como cuestión de hecho, es indudable que al dictarse las sentencias en marzo de 1950 la corte fijó un término de prisión determinado a base de su decisión al efecto de que las dos sentencias se cumpliesen concurrentemente con la dictada en diciembre de 1946. Al verse obligado por la ley el tribunal sentenciador a modificar su sentencia en cuanto a la naturaleza concurrente o consecutiva del cumplimiento, era justo y razonable que dicho tribunal reajustase también el término de prisión, a tono con la nueva situación que había surgido.

En el caso de *Pueblo* v. *Carbone*, 59 D.P.R. 610, 619, este Tribunal dijo lo siguiente:

"De todo lo expuesto nos parece que debemos ratificar la doctrina de que las cortes inferiores tienen amplia facultad para reconsiderar sus sentencias, antes de que sean ejecutadas, bien a moción de parte o motu proprio, para ajustarlas a la ley, tanto para corregir un error en que hayan podido incurrir al imponerlas, como para ajustarlas a cualquier situación de hechos que sean debidamente probados por una u otra parte.

"Somos de opinión, sin embargo, que esa facultad no debe ejercitarse arbitrariamente, sin que exista un motivo justificado. La presunción es que cuando una corte dicta su sentencia lo hace tomando en consideración todos los hechos concurrentes probados. Aumentar la penalidad impuesta por el mero hecho de que el acusado solicite la reconsideración de la sentencia, aun cuando la originalmente impuesta sea leve, como en el caso de autos lo fué, y sin que exista nada en el récord que demuestre que la corte tuvo ante su consideración prueba adicional, no constituye un ejercicio razonable de la facultad discrecional así reconocida a las cortes inferiores."

Véase, incidentalmente, el caso de *Ex parte Zacarías* v. *El Pueblo*, 41 D.P.R. 730.

La facultad de modificación de sentencia no fué ejercitada arbitrariamente en este caso, existiendo motivos justificados para tal modificación, tal como hemos expuesto anteriormente.

*Debe declararse sin lugar la petición de mandamus.*