EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PABLO LOZANO DÍAZ, acusado y apelante.

*Número:* CR-62-125    *Resuelto:* 28 de junio de 1963

*Rafael Vázquez Colón,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al apelante; *J. B. Fernández Badillo, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Convicto el apelante en el año 1958 por el Tribunal Superior, Sala de Caguas, de escalamiento en primer grado subsiguiente, le fue impuesta una pena de 2 a 15 años de presidio. Apeló, mas luego desistió del recurso interpuesto. Cuando ya había extinguido tres años de la condena, radicó un recurso de hábeas corpus en el Tribunal Superior, Sala de San Juan. El hábeas corpus fue trasladado para verse ante la Sala de Caguas. El día señalado para la vista, cuando el apelante tuvo conocimiento de que el recurso se vería ante el mismo juez que lo sentenció, manifestó que desistía de su petición. Cf. *Capeles* v. *Delgado*, 83 D.P.R. 694 (1961). El fiscal entonces llamó la atención del juez al hecho de que cuando el acusado fue procesado había aceptado una alegación sobre reincidencia que figuraba en la acusación y esto hacía imperativo que se le impusiera una pena mínima de 10 años por el segundo delito. Art. 56 del Código Penal, 33 L.P.R.A. sec. 131. Durante este incidente el apelante no estuvo asistido de abogado. (¹) El juez, en vista de lo alegado por el fiscal, inmediatamente dejó sin efecto la sentencia impuesta tres años antes y pronunció una nueva condenándolo a sufrir una pena de 10 a 15 años de presidio. Al día siguiente el juez sentenciador dejó sin efecto la sentencia dictada por no haber estado el apelante asistido de abogado en el acto de pronunciarla y ordenó se le citara para una fecha posterior. Surge que al dictar sentencia posteriormente estuvo asistido de abogado. Le impusieron de 10 a 12 años.

Recurrió ante nos y le nombramos abogado para que le brindara ayuda legal.

---

(¹) El acusado tenía el derecho a estar representado por abogado en esa *ocasión para, entre otras cosas,* estar en condiciones de plantearle al juez que no procedía en derecho que se reconsiderara la sentencia de 1958, pero la realidad es que esa oportunidad la ha tenido ante nos. En nada se perjudica el que el asunto se plantee ante este Tribunal por primera vez. Además pudo haberlo planteado cuando se le dictó la sentencia en reconsideración cuando el juez inquirió si había alguna razón por la cual no se podía dictar sentencia.

El abogado designado levanta la cuestión de que la nueva sentencia impuesta es contraria a derecho. Sostiene que no se podía alterar la pena que se le impuso en el año 1958 una vez comenzara a extinguirla.

■ En *Santiago* v. *Jones*, 74 D.P.R. 617 (1953) expusimos la regla general sobre esta materia así:

"La facultad de un juez sentenciador para reconsiderar una sentencia impuesta dentro de un proceso criminal, se encuentra restringida por ciertas normas que deben esclarecerse antes que se pueda llegar a una conclusión definitiva. La primera norma es que el sentenciado debe encontrarse todavía bajo la custodia del tribunal sentenciador, sin haber empezado a cumplir ninguna parte de la sentencia original; la segunda norma es que la reconsideración no se produzca a menos que un error en el nombre, en la pena impuesta, o en la aplicación de la ley a los hechos probados en el proceso, justifiquen la reconsideración de la sentencia original; la tercera norma es, que existan ciertas circunstancias que justifiquen la mitigación o la agravación de la sentencia."

Lo anterior expone la regla general. Se refiere a las sentencias válidas.

El caso de *Santiago* trataba de un acusado a quien un juez había impuesto una sentencia válida y luego de sentenciado el acusado se había dado a la fuga. El juez luego que fue apresado reconsideró su primera sentencia e impuso una más onerosa. Se resolvió que podía hacerlo.

En otro caso resuelto por este Tribunal en que se expone la regla general, *Pueblo* v. *Carbone*, 59 D.P.R. 610 (1941), la pena impuesta originalmente era válida. Acusado de acometimiento y agresión simple el juez lo declaró convicto y le impuso $2.00 de multa. Al solicitar reconsideración le impuso $5.00. Resolvimos que había abusado de su discreción y restablecimos la pena original.

En *Pueblo* v. *Tribl. Superior*, 81 D.P.R. 904 (1960) se citan los dos casos anteriores haciéndose referencia a la doctrina en ellos expuesta, pero los hechos que se consideraban se relacionaban con el archivo y sobreseimiento de ciertas acusaciones.

838

■ En la recopilación de jurisprudencia que aparece en la Anotación, *Criminal Law Changing Sentence*, 168 A.L.R. 706, a la pág. 719, se expone la doctrina según ha sido enunciada por la inmensa mayoría de los casos:

"Es generalmente aceptado que una sentencia nula—una que la corte no tiene jurisdicción o autoridad para imponer—puede ser reemplazada en cualquier momento, antes o después de haber comenzado su ejecución o de haber expirado el término de la corte,[2] por una sentencia válida; en tal caso la corte sentenciadora está autorizada para substituir una sentencia legal y válida por la nula anterior."[3]

■ En el caso de *Hayes* v. *United States*, 249 F.2d 516 (D.C. Cir. 1957) cert. den. 356 U.S. 914 (1958) se estudian las distintas reglas relacionadas con esta materia. Se expone que si la sentencia original es válida, posteriormente no se puede aumentar si se ha empezado a extinguir. Se hace referencia además a la regla que luego expusimos en *Pueblo* v. *García*, 83 D.P.R. 430 (1961). Si el acusado apela o radica un hábeas corpus, para atacar una sentencia inválida se ha sostenido que la corte al dictar nueva sentencia puede aumentarle la pena. Luego de exponer estas dos situaciones sostiene que si la sentencia dictada no se ajusta a la pena establecida por la ley, la corte tiene autoridad para dictar una nueva que se ajuste a la ley aunque la pena original haya comenzado a

---

[2] En la mayor parte de las jurisdicciones la ley establece un término dentro del cual los tribunales actúan. En Puerto Rico los tribunales de primera instancia actúan durante todo el año, no hay términos.

[3] En 5 Wharton's *Criminal Procedure*, sec. 2191 (ed. 1957) se expone la regla en esta forma:

"*Cuando una corte ha impuesto una sentencia que es nula, ya por falta de jurisdicción, ya por no autorizarla el estatuto relativo a dicho delito, ésta puede ser eliminada y substituída por una sentencia válida en cualquier momento, antes o después de haber comenzado a cumplirse la sentencia* . . . Si por el contrario, la sentencia originalmente impuesta cae dentro de las facultades y poderes del tribunal sentenciador y es meramente errónea o irregular, tal sentencia no es inválida o nula y queda dentro de la regla aplicable que regula los cambios que se hagan a la sentencia una vez el acusado ha comenzado a extinguirla." (Énfasis suplido.)

extinguirse. Considera el caso de *Bozza* v. *United States*, 330 U.S. 160 (1947) que seguimos en *Pueblo* v. *García*, y luego de analizarlo a la luz de los hechos que presentaba termina diciendo:

"En *Bozza* se dijo que la sentencia original constituía un 'castigo nulo' ya que era sólo para encarcelamiento y no incluía multa, a pesar de que el estatuto también imponía multa. Es cierto que sólo habían transcurrido cinco horas hasta el momento de corregirse y que en el interim el acusado, aunque en un lugar de detención federal, no había sido llevado a una penitenciaría; pero esto parece no haber sido la base para la decisión en el sentido de que no había habido doble exposición. La Corte dijo que el error en la sentencia había sido por inadvertencia, como lo fue en el presente caso, y que, si el error no podía ser corregido en la manera en que allí se hizo, no se podría imponer una sentencia válida, resultando así que un prisionero, cuya culpabilidad había sido establecida en juicio escaparía al castigo totalmente. La Corte continuó:

"La Constitución no dispone que el sentenciar sea un juego donde una jugada equivocada por el juez conceda la inmunidad al prisionero. Véase *King* v. *United States*, 69 App. D.C. 10, 15, 98 F.2d 291, 296. En este caso la corte 'sólo echó a un lado lo que no tenía autoridad para hacer y substituyó lo que requería la ley que se hiciera al ser convicto el acusado'. In re Bonner, supra, [151 U. S. 242] a la página 260, 14 S. Ct. [323] a la página 327, 38 L.Ed. 149. No sometió al peticionario a una doble exposición por el mismo delito."

"     .     .     .     .     .     .     .     .

"Creemos que debemos aplicar el fallo de *Bozza* al presente caso. La ley de julio 18 de 1956 especificaba la penalidad; ninguna otra podía ser válidamente impuesta. Es cierto que el acusado había comenzado a servir la pena; pero según entendemos *Bozza*, el tiempo así cumplido no constituía un castigo válido cuyo aumento, para ajustar la sentencia a derecho, constituyera doble exposición. Asumimos que para evitar la doble exposición la nueva sentencia debe ser efectiva retroactivamente a la fecha de la sentencia original; esto es,

que no se requiere al acusado cumplir nuevamente el tiempo que estuvo encarcelado por razón de la sentencia nula."

Así vemos que la Regla que enunciamos en *Santiago* se circunscribe a las sentencias que han sido dictadas válidamente de acuerdo con lo establecido en la ley. Al mismo efecto: *Reyes* v. *United States,* 262 F.2d 801 (5th Cir. 1959); *Orrie* v. *United States,* 302 F.2d 695 (8th Cir. 1962); *Mathes* v. *United States,* 254 F.2d 938 (9th Cir. 1958); *United States* v. *Krimsky,* 207 F.Supp. 208 (C. S.D. N.Y. 1962); *State* v. *Porks,* 36 N.E.2d 42 (Ohio 1941); *State* v. *Shilinsky,* 81 N.W.2d 444 (Iowa 1957); *People ex rel. Abrahamson* v. *Snyder,* 81 N.Y.S.2d 538 (1948); 83 N.Y.S.2d 82 (1948); Anotación, *Criminal Law—Changing Sentence,* 168 A.L.R. 706–719; Nota, *The Judicial Finality of Criminal Sentence,* 44 Harv. L. Rev. 967 (1931).

■ La teoría es que una sentencia dictada contrario a lo que dispone la ley es nula e inexistente. El tribunal carece de poder para dictarla ". . . [L]os estatutos de penalidad son jurisdiccionales, es decir; . . . limitan el propio poder de la Corte". *De Benque* v. *United States,* 85 F.2d 202 (D.C. Cir. 1936). Si la ley establece como mínimo diez años el juez no puede imponer dos. Su actuación es nula porque está contra lo expresamente establecido por el estatuto. Y el juez puede en cualquier momento corregir el error para ajustar la sentencia a lo ordenado por la ley. En *State* v. *Peters,* 366 P.2d 148 (N.M. 1961) cert. den. 82 S.Ct. 849, se expresó así el tribunal al considerar una cuestión similar a la que aquí estudiamos:

"El apelante sostiene que la primera sentencia era meramente irregular y que, habiendo sido cumplida en parte por él, la corte carecía de jurisdicción para alterar dicha sentencia. Carece de méritos dicha contención. Si el acusado hubiera sido confinado por disposición de una sentencia válida, tal vez una mayor discusión del asunto estaría justificada y posiblemente un resultado distinto surgiría; sin embargo, tal no es el caso. Las sentencias deben ser impuestas según prescribe el estatuto. § 41-17-1 1953 Comp. La primera sentencia no era meramente

irregular; no siendo una autorizada por ley era nula y el Juez Swope estuvo justificado en desecharla como una mera futilidad. *State* v. *Lucero,* 48 N.M. 294, 150 P.2d 119; *Jordan* v. *Swope,* 36 N.M. 84, 8 P.2d 788; *In re Lujan,* 18 N.M. 310, 137 P. 587. Véase Notas en 69 A.L.R. 1177, 141 A.L.R. 1225 y 168 A.L.R. 706. Compárese *Ex parte DeVore,* 18 N.M. 246, 136 P. 47. Y una sentencia nula puede ser eliminada aun cuando haya sido ejecutada parcialmente. *United States* v. *Bozza,* 3 Cir. 155 F.2d 592; *Bryant* v. *United States,* 8 Cir. 214 F. 51, *State ex rel. Cutrer* v. *Pitcher,* 164 La. 1051, 115 So. 187."

Y en *Mathes* v. *United States,* 254 F.2d 938 (9th Cir. 1958) se dice: "Está bien establecido que una sentencia que no se ajusta a la letra del estatuto penal es, no sólo errónea, sino nula." Ver además *Johnson* v. *Hand,* 367 P.2d 70 (Kan. 1961).

■ Es conveniente apuntar que aun las sentencias que al dictarlas se ajustan a la ley pueden ser alteradas después de comenzarse a extinguir si la alteración beneficia al confinado. *United States* v. *Benz,* 282 U.S. 304 (1931).

■ El caso de *Benz* dispone además de la contención al efecto de que los tribunales no tienen poder para alterar las sentencias una vez que se han comenzado a extinguir. Si se pueden reducir después que el acusado ha pasado de la custodia judicial a la ejecutiva, evidentemente también hay poder para corregir las sentencias cuando la impuesta no se ajusta a lo establecido expresamente por la ley, si no hay otro impedimento legal. La Regla 35 de las de Procedimiento Federal(4) autoriza a las cortes federales a corregir una sentencia ilegal en cualquier momento. Si fuera contraria a

---

(4) Dispone así la referida regla:

"The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the Supreme Court denying an application for a writ of certiorari."

En las nuevas Reglas de Procedimiento Criminal la 185 es similar a la 35 federal.

la Constitución por violar la separación de poderes—que es la base de la tesis de quienes sostienen que no hay autoridad para hacerlo porque ha pasado el acusado de la custodia de lo judicial a la ejecutiva—una regla de procedimiento no podría autorizarlo. Como se dijo en *United States* v. *Krimsky*, supra, esa regla sólo codificó el estado de derecho existente. Se ha sostenido que éste es un poder inherente que tienen los tribunales. *Lyons* v. *Goldstein*, 47 N.E.2d 425, 429 (N.Y. 1943); *People* v. *Hemmerich*, 162 N.Y.S.2d 701 (1957). Y si la defensa de doble exposición fuera aplicable a hechos como los que presenta este caso, una regla de procedimiento tampoco podría impedir su aplicación.

Ya este Tribunal en el caso de *Estremera* v. *Jones*, 74 D.P.R. 202 (1952) había adoptado la doctrina al efecto de que si la sentencia es nula, por no ajustarse a la ley la misma podía ser reconsiderada en cualquier momento a instancias del propio tribunal sentenciador.

En *Estremera* se impuso una sentencia con fecha 23 de diciembre de 1946 condenando al peticionario a cumplir de 2 a 8 años de presidio. Luego en 28 de marzo de 1950 fue condenado en dos casos tras haberse declarado culpable y se le impuso una pena de 2 a 8 años de presidio en cada caso para ser cumplida concurrentemente con la pena impuesta en el primer caso. "El 27 de febrero de 1951 el Tribunal de San Juan, *motu proprio*, hizo comparecer ante dicho tribunal al peticionario, representado por un abogado, y en corte abierta la corte modificó las sentencias del 28 de mayo de 1950 disponiendo que las mismas fuesen cumplidas concurrentemente después que el convicto hubiese extinguido la de dos a ocho años de presidio que le fuera impuesta el 23 de diciembre de 1946." Al día siguiente esta última sentencia fue reconsiderada para reducir las correspondientes a los últimos dos casos al término de 1 a 3 años pero siempre concurrentes y para ser extinguidas al terminar de cumplir la primera sentencia. El juez basó su actuación al disponer que las sentencias im-

puestas en los dos últimos casos deberán comenzarse a extinguir luego de cumplida la primera, en lo dispuesto en la Sec. 3 inciso (e) de la Ley Núm. 108 de 12 de mayo de 1943, 34 L.P.R.A. sec. 1033. Así el tribunal lo que hizo fue ajustarla a lo expresamente establecido en la ley.

Resolviendo la cuestión expresamos:

"Carece de validez una modificación de sentencia que implique un aumento en el castigo o en la pena impuesta a un acusado especialmente cuando este último ha empezado a cumplir la sentencia original. [citas] Si en dos sentencias se ha determinado que ambas han de ser cumplidas concurrentemente, carece de validez una modificación posterior de ambas sentencias al efecto de que ellas se cumplan en forma consecutiva, ya que ello envuelve un aumento en el castigo o en la pena. [citas] Sin embargo, si las sentencias originales, o las penas impuestas por ellas son nulas o ilegales, ellas pueden ser modificadas posteriormente aun aumentando el castigo o la pena. [citas] Una actuación judicial inválida no debe conllevar consecuencias legales y el orden público debe permitir que se remedie en forma legal una sentencia que sea contraria a la ley. Debe protegerse en lo más posible el derecho de un acusado a no ser expuesto dos veces por el mismo delito, pero un acusado no debe estar en posición de recibir beneficios a base de un pronunciamiento judicial que sea contrario a la ley."

Establecida la facultad que tienen los tribunales para corregir las sentencias que impongan contrario a la ley, no erró el tribunal de instancia al sentenciar de nuevo al apelante. Deberá abonársele el tiempo que haya extinguido cumpliendo la sentencia dictada en el año 1958.

*Se confirmará.*

El Juez Asociado Señor Santana Becerra disintió en opinión separada en la cual concurren los Jueces Asociados Señores Belaval y Hernández Matos.

—O—

Opinión disidente del Juez Asociado Señor Santana Becerra en la cual concurren los Jueces Asociados Señores Belaval y Hernández Matos.

San Juan, Puerto Rico, 28 de junio de 1963

En 28 de octubre de 1958 la Sala de Caguas del Tribunal Superior declaró convicto a Pablo Lozano Díaz de escalamiento en primer grado subsiguiente y lo condenó a sufrir una pena de dos a quince años de presidio con trabajos forzados. En 5 de octubre de 1961, casi tres años después de estarse cumpliendo dicha sentencia, siendo la misma firme sin que hubiera sido anulada a instancias del propio convicto, el Tribunal Superior abrió de nuevo el proceso criminal, le hizo comparecer, y le dictó una sentencia de diez a doce años de presidio con trabajos forzados. La sentencia dictada reza así:

"SENTENCIA RECONSIDERADA

"POR CUANTO:—El día 25 de septiembre de 1961, se llamó este caso para la ventilación del Hábeas Corpus radicado por el acusado en el mismo.

"POR CUANTO:—De los autos aparece que el Tribunal inadvertidamente dictó sentencia el día 25 de octubre de 1958, no tomando en consideración la alegación de subsiguiente.

"POR TANTO:—Comparece el acusado en el día de hoy en persona y asistido de su abogado, el Lcdo. Gerardo Almeda Aponte a recibir su sentencia reconsiderada en este caso, y no habiendo expuesto el acusado impedimento legal alguno, el Tribunal procede a ello y condena a dicho, PABLO LOZANO DÍAZ, a sufrir una pena de DIEZ A DOCE AÑOS DE PRESIDIO CON TRABAJOS FORZADOS, sin costas.

"Y se ordena que el sentenciado sea conducido de este Tribunal a la Penitenciaría Estatal donde será recluído por el término señalado en esta sentencia." (¹)

---

(¹) El apelante había radicado una petición de hábeas corpus en el Tribunal Superior de San Juan, alegando que no tuvo asistencia de abogado. El recurso se le trasladó al Tribunal Superior de Caguas donde se le procesó originalmente. En la vista del hábeas corpus el convicto retiró su petición, diciendo: "Yo la retiro porque alego que no tenía asistencia legal de abogado. Aquí no puedo alegarlo otra vez porque sería una falta de respeto al Tribunal y si se ve se declararía sin lugar. El Hábeas Corpus yo lo radiqué para San Juan." Acto seguido: "HON. JUEZ—En el caso criminal yo te puse de DOS a QUINCE años. El Fiscal llama la atención al

Me parece que, si hay alguna ocasión en que el mandato constitucional contenido en nuestra Carta de Derechos que declara que "Nadie será *puesto en riesgo* de ser castigado dos veces por el mismo delito" viene a ser una mera expresión vacua, carente de significación y contenido, esa ocasión la produjo la Sala sentenciadora con lo ocurrido en este caso.

Aquí se entrecruzan dos conceptos normativos que mutuamente se integran para un fin deseable. Uno envuelve la extensión de la función judicial en procesos criminales—cuándo ha de considerarse terminada dicha función. El otro, el alcance y efecto de la garantía constitucional que impide el doble riesgo de ser castigado. En cuanto a lo primero, tenemos en nuestros casos expresiones concluyentes que no improvisamos porque recogen el sentir de una doctrina de general aceptación en la jurisprudencia angloamericana, al efecto de que esa función judicial termina una vez que el sentenciado pasa a cumplir la pena impuesta y queda bajo la potestad del Poder Ejecutivo. Véanse: *Ex parte Zacarías y El Pueblo*, 41 D.P.R. 730 (1931); *Pueblo* v. *Carbone*, 59 D.P.R. 610, 616, 617, 619 (1941); *Estremera* v. *Jones*, 74 D.P.R. 202, 206 (1952); *Santiago* v. *Jones*, 74 D.P.R. 617, 620 (Belaval), 626 (Snyder), 627 (Negrón Fernández) (1953)—sobre este aspecto no hubo criterios en discrepancia; *Pueblo* v. *Tribunal Superior*, 78 D.P.R. 143, 144 (1955).

En este último caso citado, después de tres años de estar cumpliendo una sentencia de 20 a 25 años de presidio la Sala

---

Tribunal de que es una sentencia errónea, que el mínimo no son DOS años, que son DIEZ. Tengo que corregir el error judicial y en vez de DOS son DIEZ años." . . . . "HON. JUEZ—A ti se te dio una oportunidad. Oída las manifestaciones del peticionario y la atención que llama el Fiscal hacia el Tribunal al error cometido al dictar sentencia, el Tribunal deja sin efecto la sentencia anterior dictada, corrige la misma y le impone de DIEZ a QUINCE años de presidio." Esta sentencia, dictada el 25 de septiembre de 1961, fue dejada sin efecto al día siguiente mediante orden emitida en el proceso criminal de escalamiento en que se hace constar que el acusado no estaba debidamente asistido por un abogado (en el hábeas corpus). Se le ordenó que compareciera nuevamente el 5 de octubre para el pronunciamiento de la sentencia reconsiderada.

sentenciadora, a petición del convicto, la reconsideró rebaján-
dola a una de 10 a 25 años. Anulamos esta acción aun cuando
fue beneficiosa para el convicto, reconociendo la carencia de
facultad judicial según la norma establecida. En el caso de
*Ex parte Zacarías*, ante, dijimos, (733) y hemos repetido con
aprobación, refiriéndonos a los casos que sostienen que una vez
que ha comenzado la ejecución de la sentencia la corte carece
de *facultad* para corregirla: "El Juez Asociado Sr. Miller en
*Ex parte Lange, supra*, demuestra que el principio en que se
basan estas decisiones es muy similar a una segunda exposi-
ción por el mismo delito (*jeopardy*). La corte en dicho caso
dice que la razón por la cual un hombre no debe sufrir una
segunda sentencia *o una sentencia más severa* cuando la pri-
mera está en proceso de ejecución, es la misma razón o una
similar *a la de un segundo juicio*, después de haberse convicto
o absuelto al acusado." (Énfasis puesto.)

Por más que se quiera dorar lo ocurrido, eso precisamente
fue lo que le pasó a Lozano Díaz en manos del Tribunal Su-
perior. Se le sometió a un segundo proceso sin que el primero
quedara anulado por su propia iniciativa; se le *puso en riesgo*
otra vez de ser castigado y, aún más, el riesgo cobró realidad
y se le castigó por segunda vez. Si eso no lo prohibe la dis-
posición constitucional, no sé entonces qué es lo que prohibe.
Si eso es correcto a los tres años de estarse cumpliendo una
sentencia, lo sería a los diez, y lo sería igualmente correcto
después de extinguida la misma y el hombre ya libre. Sólo
habría una diferencia de *grado* entre una y otra situación,
pero el principio de derecho que sostiene una, incuestionable-
mente sostendría la otra.

Parece que hay la impresión de que por la decisión emitida
en el caso de *Bozza* v. *United States*, 330 U.S. 160 (1947), el
viejo y aceptado principio ha cambiado, quizás debido a unas
generalizaciones que ahí se hacen. Algo de esa impresión se
capta en ciertas manifestaciones colaterales del Juez Sr. Ortiz

en *Estremera* v. *Jones*, ante, caso que conviene aclarar no hacía un planteamiento de doble exposición.

Leído con detenimiento, no creo que *Bozza* exija una alteración de la norma. El Tribunal Supremo puntualizó los hechos. El estatuto bajo el cual quedó convicto el acusado imponía una pena mínima de multa y prisión. Se le impuso sólo prisión al ser sentenciado. El convicto pasó a la oficina del *Alguacil* y de ahí a una cárcel de detención en espera de transportación a la penitenciaría donde cumpliría la condena. Unas *cinco horas* después, el juez lo hizo comparecer y lo sentenció otra vez imponiéndole también una multa. Es obvio, y así se ha resuelto, que al ser sentenciado de nuevo el convicto no había comenzado a extinguir la pena. Se sostuvo la acción del juez sentenciador. Sin embargo, ciertas expresiones contenidas en esa decisión no deben tomarse divorciadas de sus hechos, sobre todo, considerándose la procedencia que da el propio Tribunal:—el caso de *In re Bonner*.

La expresión un tanto impresionista de que "Esta Corte ha rechazado la doctrina 'que un prisionero, cuya culpabilidad se ha establecido por un veredicto en forma regular, haya de escapar castigo enteramente porque la corte cometió un error' " y que "En este caso la corte 'sólo dejó sin efecto aquello que no tenía autoridad para hacer y sustituyó las instrucciones requeridas por la ley a ser seguidas al condenarse al ofensor' " (330 U.S. 166, 167) fueron transcritas del caso de *Bonner*. Hay que ver, pues, la ocasión y el marco legal en que originalmente se hicieron esos pronunciamientos, para evaluar su alcance y el alcance de la decisión de *Bozza*, así como su pertinencia a una situación como la del caso ante nos.

*In re Bonner*, 151 U.S. 242, fue un recurso de *hábeas corpus* en que el propio convicto impugnó la sentencia. Esto presenta seguido una de las clásicas excepciones en que no se puede invocar la garantía constitucional, si como consecuencia de la acción del convicto, tiene él que afrontar un segundo

proceso o una segunda sentencia anulando lo anterior. Una corte federal sentenció a Bonner a extinguir la pena en una penitenciaría estatal. Se sostuvo el hábeas corpus y se decretó que la sentencia era ilegal por tal concepto. Se suscitó entonces lo referente a la disposición del recurso. El convicto sostenía que se le debía poner en absoluta libertad. El Tribunal Supremo no le dio la razón, exponiendo que su proceso había sido válido en todo sentido, siendo erróneo sólo el pronunciamiento de la sentencia. Es en relación con este planteamiento y para resolver el mismo, que se hacen las manifestaciones (151 U.S. 259, 260, 261) que luego se reproducen en *Bozza*, y que a la luz de los hechos de este último, pueden ser, inclusive, *dicta*. Más aun, esa expresión en *Bonner* se copió a la vez del caso de *Beale* v. *Commonwealth*, 25 Penn. St. 11, dichas en un recurso de *apelación*. Un segundo riesgo o proceso como consecuencia de una apelación del convicto es otra clásica excepción a la garantía constitucional de no ponerse en riesgo de ser castigado dos veces. (²)

Por los propios hechos de *Bozza* y por todas esas circunstancias, me resisto a creer que esta decisión sea autoridad, directa o indirectamente a través de la aplicación que le han dado otros tribunales, para sostener constitucionalmente lo aquí ocurrido a Lozano Díaz. Difícilmente lo sea, si se considera la posición del propio Tribunal Supremo en torno a esta

---

(²) Los otros casos citados en *Bozza* en lo pertinente—*Barrow* v. *United States*, 295 Fed. 949, fue una *apelación* en que se ordenó nueva imposición de sentencia; *Jordan* v. *United States*, 60 F.2d 4, 6, fue otra *apelación*, y es curioso que se siguió la norma y se dijo: "Es obvio que el acusado *en forma alguna se perjudicó* con la enmienda de la sentencia, y, toda vez que *él no había comenzado a cumplir la misma*, caía dentro de la facultad de la Corte de Distrito el hacer la enmienda, bajo la regla estatuida en *United States* v. *Benz*, 282 U.S. 304 [citas]." (Enfasis suplido.) *King* v. *United States*, 98 F.2d 291, impuso una segunda sentencia después de estarse cumpliendo la primera, pero fue el resultado de un *hábeas corpus* que el convicto tramitó con éxito; y finalmente, *De Benque* v. *United States*, 85 F.2d 202 trataba de la facultad para corregir una sentencia nula o errónea después del término en que se dictó y después de estarse cumpliendo; pero la segunda sentencia resultó aquí ser más benigna.

garantía constitucional en casos posteriores de gran significación.

Once años después de resuelto *Bozza,* en *Deutschmann* v. *United States* (1958) la Corte de Apelaciones del 9no. Circuito afrontó una situación parecida, 254 F.2d 487, cert. denegado, 357 U.S. 928. Al día siguiente de imponérsele al acusado una sentencia por un tercer cargo a ser cumplida *consecutivamente* al terminar otra de 15 años por un primero, y mientras el convicto aún se hallaba bajo la custodia del *Alguacil* y en espera de transportación a una penitenciaría, se le llamó a corte y se le sentenció nuevamente, corrigiéndose la sentencia en cuanto a ese tercer cargo que resultaba ser ilegal. Se levantó la cuestión de exposición anterior. La Corte de Apelaciones consideró la decisión de *Bozza* y se pronunció así: "El apelante asevera en primer lugar que es inconstitucional aumentar una sentencia después que el convicto ha empezado a cumplirla. *Por supuesto esto es correcto.*" [cita] Se desestimó el planteamiento de doble exposición a la luz de los hechos del caso y termina la Corte de Apelaciones: (490) "Es bien sabido que cuando hay sentencias consecutivas, se cumplen en el mismo orden en que aparecen en la acusación. Así, cuando el apelante entró en la cárcel del condado, él empezó a cumplir la sentencia que recibió bajo el cargo 1, y cualquier aumento del término bajo el cargo 3 se hizo *antes* de que comenzara a servir la sentencia dictada por ese cargo." (Énfasis suplido.)

En *United States* v. *Rosenstreich,* 204 F.2d 321, decidido en 1953 también con posterioridad a *Bozza,* el 2do. Circuito revocó una sentencia dictada nuevamente que aumentó una pena de multa. El acusado fue sentenciado en junio 30, 1952 a pagar $1,000 de multa y a un término de prisión por un año en probatoria. En julio 8, 1952 se dejó sin efecto la sentencia y se dictó otra aumentando la multa a $10,000 y rebajándole diez días al término de prisión, quedando igualmente en probatoria. Dijo el Juez Frank: "Está bien sentado que, gracias

a la disposición de doble exposición de la V Enmienda, una corte federal no puede aumentar (a) una sentencia de prisión una vez que ha comenzado la ejecución de la misma, o (b) una sentencia de pago de una multa después que la misma ha sido satisfecha. Creemos que a tal propósito, por lo menos, la probatoria, que se ha llamado 'un medio autorizado de castigo benigno ambulante', debe considerarse como el equivalente de prisión. Un período probatorio comienza cuando el juez impone la sentencia ... Entendemos que la sentencia impuesta en junio 30 debe considerarse como una unidad. Por lo tanto, ya se había cumplido en parte antes de julio 8, y la acción del juez en esa fecha aumentando la multa fue más allá de su poder legal." El Juez Hand expresó duda en cuanto a si al ponerse al acusado en probatoria había comenzado la ejecución de la sentencia, pero fue de opinión, yendo aún más lejos, que toda vez que el abogado del convicto tenía el dinero en corte para pagar la multa antes de que se aumentara, la posibilidad de satisfacerla aun cuando no hubiera ocurrido el acto formal del pago debía tener el efecto de haberse satisfecho. Concurrió, por lo tanto, con la Corte en que se revocara la sentencia.

Otra situación parecida la presenta *Oxman* v. *United States*, 148 F.2d 750, (1945) cert. den. 325 U.S. 887. Expresó el 8vo. Circuito: "La regla general es que las sentencias, tanto civiles como criminales, quedan bajo el control de la corte durante el término en que se han dictado. Durante ese tiempo se considera que están 'en el seno de la corte' sujetas a ser enmendadas, modificadas o dejadas sin efecto. [cita] Esta regla está sujeta a la restricción que en casos criminales una sentencia 'ya en parte cumplida no puede ser aumentada.' [citas] La razón para tal restricción es que el aumentar una sentencia después que se ha cumplido en parte somete al acusado a doble castigo por el mismo delito en violación de la V Enmienda de la Constitución, la cual dispone que . . . . Una sentencia puede reducirse después que ha sido parcialmente

cumplida, pero no puede ser aumentada. *No es una cuestión jurisdiccional, sino una cuestión constitucional.*" [cita] (Énfasis suplido.) Se resolvió que el acusado no había comenzado a extinguir su sentencia y que la corte por lo tanto tenía jurisdicción para hacerlo comparecer y enmendar la misma.(³)

En el caso de *People* v. *Thomas*, 342 P.2d 889 (1959), la situación de hecho fue la siguiente según se expone en la opinión:—Al acusado se le imputó la posesión de heroína, y de haber sido convicto anteriormente de ese delito. Alegó ser inocente. En marzo 17, 1958 se le juzgó y el juez lo halló culpable. Se admitió en evidencia el récord de la convicción anterior, y se pospuso hasta abril 7, 1958, fecha señalada para oir al acusado sobre su petición de probatoria, la disposición de lo referente a la convicción anterior. No se le sentenció.

En abril 7 se le trajo al tribunal. La corte le denegó la probatoria, y sin disponer sobre la convicción anterior, sentenció al acusado a seis meses de cárcel. Esta sentencia no llegó a ser oficialmente registrada en las minutas. Se preparó una orden dirigida al *"sheriff"* del condado autorizándolo a mantener bajo su custodia al acusado pendiente cualquier disposición ulterior que la corte pudiera determinar. El *"sheriff"* auxiliar se llevó al acusado a la cárcel, adonde llegó a las 3:15 P.M. En el ínterin, el secretario del Tribunal se dio cuenta que no se había dispuesto de la convicción anterior y llamó la atención al fiscal, al abogado de la defensa y al juez, quienes aún se encontraban en sala, y telefoneó a la oficina del *"sheriff"* pidiendo que devolvieran al acusado a corte tan pronto llegara a la cárcel. A las 3:35 P.M. el acusado fue de-

---

(³) Cf.: *Acme Poultry Corp.* v. *United States*, 146 F.2d 738 (4th Cir. 1944), cert. den. 324 U.S. 860; *Bayles* v. *United States*, 147 F.2d 171 (8th Cir. 1945); *Rowley* v. *Welch*, 114 F.2d 499 (D.C. Cir. 1940); *Viel* v. *Potter*, 129 A.2d 230 (Conn. 1957); *Clark* v. *Memolo*, 174 F.2d 978 (D.C. Cir. 1949); *González* v. *United States*, 247 F.2d 489 (1st Cir. P.R. 1957); cert. den. 356 U.S. 913; *Franey* v. *Florida*, 211 F.2d 447 (5th Cir. 1954); *Ekberg* v. *United States*, 167 F.2d 380, 388 (1st Cir. P.R. 1948).

vuelto al tribunal, y posteriormente, a las 3:39, después que había sido devuelto, se recibió en la cárcel la orden de ingreso anteriormente referida. Dice la opinión: "Así el acusado, hasta donde demuestra el récord de la oficina del *'sheriff'*, en momento alguno estuvo en la cárcel cumpliendo la sentencia de cárcel que se le había impuesto en la sesión de la mañana de la corte." A las 4:50 se sentenció de nuevo al acusado, el juez expresó que por inadvertencia debido al mucho trabajo de esa mañana no había considerado el hecho de la convicción anterior, e impuso prisión. Esta segunda sentencia fue la única que oficialmente se registró en las minutas. Esos son los hechos de *Thomas*, y a la luz de los mismos debe tomarse su decisión. De ahí que la Corte Suprema de California dijera: "Pero la doble exposición constitucional, cualquiera que sea la etapa del procedimiento, debe ser un concepto *sustancial* más que *mecánico*. [cita] Aquí, el acusado no fue castigado, en sentido sustancial alguno, bajo la sentencia de cárcel por ser condenado a, e inmediatamente devuelto de, la cárcel. El transcurso de unas pocas horas entre el pronunciamiento de la sentencia original y de la sentencia corregida no pudo haber perjudicado al acusado. Sería absurdo especular que él hubiera llegado a la penitenciaría estatal en una fecha sustancialmente anterior, de manera de empezar a contar el tiempo para su libertad eventual [cita], si a él se le hubiera sentenciado a prisión en la mañana, en lugar de la tarde. Ni aparece que el acusado había comenzado a cumplir la sentencia de cárcel, bajo las normas que se han sugerido que contestan la pregunta "Qué constituye el comienzo del cumplimiento de una sentencia privando a la corte de *facultad* para cambiarla'" . . . . . (Énfasis suplido.)

En *Mathes* v. *United States*, 254 F.2d 938 (9th Cir. 1958), inmediatamente de ser sentenciado a menos del mínimo, pero no estando ya presente el acusado en Sala, se le llamó la atención al juez del hecho, y la corte dejó sin efecto la senten-

cia y ordenó que el acusado volviera a las 2 P.M. de ese día, y se le sentenció nuevamente.

En *Orrie* v. *United States*, 302 F.2d 695 (8th Cir. 1962), la nueva sentencia se dictó tres días después (no consta si el acusado ya había comenzado o no a cumplir la anterior), y aunque se hace referencia al caso de *Bozza*, la Corte de Apelaciones aplicó la Regla 35 de las de Procedimiento Federal, sin que aquí haya tenido vigencia un precepto similar:—"La Corte puede corregir una sentencia ilegal en cualquier momento." [4]

En *Hayes* v. *United States*, 249 F.2d 516 (D.C. Cir. 1957), cert. den. 356 U.S. 914, se modificó una sentencia a los dos meses de estarse cumpliendo. Se dice expresamente que una sentencia ilegal puede así cambiarse aun cuando se haya comenzado a cumplir y la acción sea iniciativa del gobierno. En *United States* v. *Krimsky*, 207 F.Supp. 208 las sentencias anteriores se habían anulado por apelación y hábeas corpus. *State* v. *Parks*, 36 N.E.2d 42, presenta el problema de una sentencia dictada y suspendida su ejecución, sin tener la corte facultad en ley para suspenderla. En un término posterior, se ordenó la ejecución de la misma. En *State* v. *Shilinsky*, 81 N.W.2d 444 (1957), se corrigió dos días después una sentencia oral por otra oficialmente registrada. Como en *Hayes*, antes, se sostuvo la acción.

En *State* v. *Peters*, 366 P.2d 148 (1961), veamos los hechos según los expone la Corte Suprema de Nuevo Méjico inmediatamente precediendo la parte de la decisión que este Tribunal transcribe: Al acusado se le declaró convicto de escaparse de una prisión mientras cumplía allí sentencia. Por la fuga se le juzgó y en septiembre 9, 1960, el acusado

---

[4] Aquí no ha regido tal disposición y no es necesario que me detenga a analizar la misma a la luz de la prohibición constitucional. La determinación de la validez de esa Regla federal sí, y cuanto pudiera chocar con la garantía constitucional contra la doble exposición compete al Tribunal Supremo de Estados Unidos. Hasta ahora no he visto ningún pronunciamiento específico de ese Tribunal sobre el punto.

*alegó culpabilidad*, y se le sentenció a dos años; esta pena a ser *concurrente* con la que estaba cumpliendo. En octubre 4 el Estado pidió que la sentencia se dejara sin efecto por ser contraria a la ley. El estatuto disponía que una convicción por *fuga* no podía ser concurrente con la sentencia que se cumplía. La sentencia se dejó sin efecto *pero el acusado pidió cambiar su alegación de culpabilidad* por una de no culpabilidad. Hubo entonces un juicio por jurado y como consecuencia de este *segundo juicio* se le sentenció por la *fuga*, esta vez no concurrente la pena, como mandaba el estatuto. A la luz de esos hechos debe entenderse la decisión que se cita, en donde no había un problema constitucional de doble exposición porque el acusado cambió su alegación original y fue a juicio nuevamente a *su instancia.*

La cita en la Opinión (escolio 3) de 5 Wharton's *Criminal Law and Procedure,* Sec. 2191 que trata en términos generales sobre enmendar y dejar sin efecto sentencias, debe tomarse en toda su integridad. Empieza por decir que una corte tiene poder durante el término para expurgar una sentencia irregular, y dictar sentencia nuevamente, o enmendarla o corregirla, pero el *poder cesa* cuando la sentencia se ha puesto en vigor, y la corte no puede imponer una sentencia nueva o distinta *aumentando el castigo,* aun dentro del término en que se dictó la original; que *a fortiori,* una sentencia que ha sido parcialmente ejecutada no puede dejarse sin efecto o cambiarse por la corte sentenciadora de modo *de aumentar* el castigo después de concluir el término de la corte dentro del cual se dictó; que de acuerdo con algunos casos, cuando una sentencia criminal ha sido parcialmente servida por el acusado, la corte sentenciadora tiene poder, en el término en que se dictó, para revisarla *disminuyendo* el castigo originalmente impuesto, y que en otras jurisdicciones se ha sostenido que una corte no tiene poder para dejar sin efecto una sentencia e imponer un castigo menor *después* que el prisionero ha sido ingresado con su primer sentencia; que otras juris-

dicciones han sostenido que la corte sentenciadora no puede dejar sin efecto una sentencia y *conceder un nuevo juicio* después de comenzada a cumplir, independientemente de que hubiera error que privara al acusado de un juicio imparcial; que una corte no puede enmendar una sentencia si el término en que se dictó ha expirado, y en algunos estados en que las cortes se sientan en sesión continua y no en términos (como aquí), los estatutos conceden control sobre la sentencia por un número especificado de días después de dictarse.

Lo anteriormente expresado es el fondo del tópico que expone Wharton que precede la cita del Tribunal. (⁵)

(⁵) Para entender mejor al comentarista, me voy a referir brevemente a los casos que él cita cuando dice que una sentencia *"void"* puede modificarse aun después de empezada a cumplir. Cita en primer lugar a *In re Bonner,* 151 U.S. 242, y a *De Benque* v. *United States,* 85 F.2d 202, cuya situación de hecho ya la comenté antes. En *Estate* v. *O'Keith,* 15 P.2d 443 también citado en apoyo de esa expresión, se trataba de una sentencia impuesta *sin jurisdicción* a un menor. Se dijo que la norma que una sentencia no puede dejarse sin efecto después de comenzada a cumplir no se aplica cuando la corte actuó totalmente careciendo de *jurisdicción.* La acción en este caso fue a favor del menor condenado, cosa corriente, y el Estado apeló de la orden dejando sin efecto la sentencia.

*People* v. *Murphy,* 2 N.Y.S.2d 731, envolvía una sentencia impuesta fijamente cuando debía ser indeterminada entre 25 años y reclusión perpetua. El mínimo no fue alterado. En *State* v. *Parks,* 36 N.E.2d 42, se trataba de una sentencia que quedó suspendida al dictarse, sin que hubiera autorización en ley para suspenderla. Realmente lo ocurrido fue que luego se ordenó su ejecución. En *State* v. *Lee Lim,* 7 P.2d 825, había un *hábeas corpus* por medio del cual se anuló el fallo anterior. En *Royster* v. *Smith,* 77 S.E.2d 855, se trataba de otro *hábeas corpus,* basado en la nulidad de dos sentencias por escalamiento en que se impuso menos del mínimo como base para la validez de una tercera sentencia. Se dijo que dichas sentencias eran anulables, no nulas, y como él había servido las sentencias no se le podía detener por los escalamientos pero no tenía derecho a salir en hábeas corpus hasta tanto hubiera cumplido la tercera sentencia. *State* v. *Dooly,* 128 P.2d 486, envolvía una sentencia que es cierto que se corrigió posteriormente, más bien para que de su faz aparecieran los elementos propios, pero no hubo modificación de la pena entre la primera y segunda sentencias. La segunda hacía constar que el acusado había sido declarado delincuente habitual, cosa que no aparecía en la primera. La pena no se alteró.

Y para entender mejor el concepto de *erróneo* o *irregular* de Wharton, cuando expone que si la sentencia no es ilegal o nula *"void"* y sí meramente errónea o irregular sigue la norma de que no puede alterarse después de

A pesar de esos casos federales en su mayoría, resueltos bajo la aparente autoridad de *Bozza* o bajo la influencia de la Regla 35 mencionada que entre nosotros no es ley positiva, y que deben evaluarse a la luz de sus propios hechos y circunstancias, entiendo que la garantía de nuestra Constitución sobre el doble riesgo de ser castigado ofrece protección en el caso ante nos, en las circunstancias del mismo. El hecho de si se ha comenzado o no a extinguir la condena—que en relación con esta garantía constitucional ha sido un hecho básico considerado a través de la expresión judicial clásica—tiene una mayor trascendencia que el de ser un mero divisor cronológico. De ese hecho depende el que exista o no exista ya facultad o poder judicial para la segunda actuación. Es de gran interés público que los procedimientos criminales, como los civiles, terminen; y que un procesado, como un litigante en una acción civil, no quede indefinidamente sujeto a las inconveniencias y persecuciones de un proceso criminal, que debe tener su fin, y que le llega cuando sentenciado el convicto, pasa al Poder Ejecutivo a cumplir la condena. Ahí cesa la

---

comenzada su ejecución, veamos los casos que cita: *Williams* v. *United States*, 148 F.2d 923, cert. den. 325 U.S. 888 envolvía una *apelación* del acusado contra una orden que se negó a dejar sin efecto una sentencia que él alegaba era nula. Los hechos en detalle, que nada tienen en común con una situación como la del caso de autos, aparecen al margen de la pág. 923 de 148 F.2d.

En *People* v. *Conley*, 150 Pac. 142, se sentenció originalmente *en exceso* del máximo permisible. Luego se corrigió para rebajarla al máximo, y se sostuvo que siendo la primera sentencia sólo *errónea* y no nula, *"void"*, la corte sentenciadora *no tenía poder después de comenzada a cumplir para modificarla.* (En este caso la acción favorecía al convicto.) En *Lyon* v. *Robinson*, 56 N.E.2d 546, ocurrió que la segunda sentencia fue menor que la primera y el Estado apeló. Se resolvió que la primera había sido correctamente impuesta si bien hubo un error procesal al no determinarse si el acusado había cometido el robo mientras estaba armado, cosa que quedó después probada. En este caso se restituyó una sentencia legal y correcta en su origen.

Finalmente, en *Hickman* v. *Fenton*, 231 N.W. 510, se sostuvo que una sentencia por menos del mínimo no era *nula "void"* y si la corte tenía jurisdicción sobre la persona del acusado y del delito, su sentencia no era nula no importa los errores que precedieran al ser dictada.

Esos casos, citados por Wharton, ayudan a evaluar su exposición.

facultad judicial para ulteriores determinaciones a iniciativa del Estado. Esa es la vital consideración de orden público que está en la raíz misma de la garantía constitucional que no permite el doble riesgo ni la doble exposición. De más trascendencia que el doble castigo—que en determinadas circunstancias puede válidamente haberlo por unos mismos hechos delictivos—es la prohibición contra el doble riesgo y el volver a ser expuesto, en el significado y propósito de la cláusula constitucional.

Sobre estas consideraciones, es significativo *Green* v. *United States* (1957), uno de los casos a que me referí resueltos con posterioridad al de *Bozza*, 355 U.S. 184. La renuncia implícita absoluta, consagrada en la doctrina, a no ser otra vez expuesto en casos en que el proceso o la sentencia anterior se ataca por el propio convicto, ya no lo es tan absoluta. Traído un veredicto de asesinato en segundo grado contra Green, en un proceso en que se le juzgó por primer grado, y anulada la condena en su apelación ordenándose de nuevo el proceso, la cláusula constitucional le protegía contra el proceso original en primer grado. (⁶)

Es cierto, se ha dicho, que una actuación nula anterior nunca ha puesto a la persona en riesgo, y el impedimento constitucional no es aplicable a un proceso o actuación posterior. Pero esa nulidad es en el sentido de la *inexistencia*,

---

(⁶) En recuerdo de Jueces que en el pasado ocuparon un sitial entre nosotros, tal vez deba decirse que cuarenta y cinco años antes de la decisión de *Green*, en *Pueblo* v. *Peña*, 18 D.P.R. 903, (1912), dijeron: "Ha quedado bien establecido por la uniforme corriente de autoridades que cuando se imputa a una persona un delito que comprende otro de grado menor, y se celebra un juicio en debida forma y declara culpable a dicha persona solamente de la comisión del delito de grado menor, el veredicto viene a hacer las veces de una absolución por el delito imputado y no puede el acusado ser nuevamente juzgado por ese delito *aun en el caso de que se conceda un nuevo juicio mediante solicitud del referido acusado;* . . . ." (Énfasis suplido)

Así lo dijeron nuestros jueces, no obstante el hecho de que siete años antes en 1905 el Tribunal Supremo, en *Trono* v. *United States*, 199 U.S. 521, 533, había expuesto como la "mejor norma aplicable" una todo lo contrario de la anteriormente expresada en *Peña*.

caso típico es el de la ausencia de poder judicial por falta de jurisdicción, o facultad legal para actuar en un proceso o materia.

En el caso de autos no hubo inexistencia del proceso. Se tramitó ante un tribunal con jurisdicción sobre el delito y a base de una acusación radicada con autoridad para ello. La sentencia, incuestionablemente, fue errónea, ilegal en tanto no se ajustó a la ley o llámesele nula en ese sentido, pero no inexistente por carencia de los elementos básicos del ejercicio del poder judicial.

En dos viejos casos de California, *People* v. *Horn*, 11 Pac. 470 (1886), y *People* v. *Roberts*, 45 Pac. 1016, (1896), el tribunal, en violación de la ley *ordenó* al jurado y éste así lo hizo, traer un veredicto absolutorio, cuando la ley sólo facultaba al juez a *aconsejar* al jurado que podían traer un veredicto absolutorio; la Corte Suprema de California le dio la protección constitucional a aquellos acusados a quienes se les quiso someter a juicio a base del error del juez, aun cuando en términos menos precisos se pudiera considerar dicha actuación nula, en tanto fue contraria a la ley.

El propio Magistrado sentenciador en este caso trae el concepto apropiado, al exponer que "inadvertidamente" dictó sentencia "no tomando en consideración la alegación de subsiguiente." El Magistrado sentenciador ha prestigiado nuestra judicatura por más de una veintena de años, con una gran capacidad judicial e integridad. Pero estas cosas a veces ocurren en todas partes. Es precisamente para cuando tienen lugar que existe la protección contra el doble riesgo. Si la sentencia original se hubiera amoldado a la ley y todo hubiera sido legal, Lozano Díaz no habría necesitado que estuviera escrita en nuestra Carta de Derechos esa garantía constitucional. Se podrá raciocinar sobre la misma, pero la verdad que se resiste a no salir es que este convicto fue puesto por el Estado una vez más en riesgo de ser castigado.

Comprendo que Lozano Díaz puede escapar al castigo a

que era merecedor. A veces hay que pagar ese precio por salvar valores constitucionales.

Hace sólo varias semanas que el Tribunal Supremo de Estados Unidos dio plena significación a ese valor constitucional, aun cuando se escapara de un castigo, en *Downum* v. *United States*, 372 U.S. 734, (31 L.W. 4369) en que se pospuso un caso y se disolvió el jurado por ausencia de un testigo esencial en dos de los cargos. El acusado pidió que continuara el proceso en cuanto a los demás, y se le denegó su petición. No llegó a practicarse prueba alguna. Dos días después se llamó el caso nuevamente, y constituido el jurado, se planteó la cuestión de exposición anterior. El Tribunal Supremo le reconoció al acusado la plena protección de la garantía constitucional:—"Ya que la prohibición de la Cláusula sobre Doble Exposición 'no es contra el ser castigado dos veces, sino contra el ser dos veces puesto en riesgo.'" Más adelante: "Resolvemos cualquier duda a favor de la libertad del ciudadano, más que ejercitar lo que sería una ilimitada, incierta y arbitraria discreción judicial."

Porque el Tribunal Superior de Caguas carecía de facultad judicial para abrir el proceso ya terminado y sentenciar de nuevo al apelante, y porque de haber tenido ese poder o esa discreción lo hecho infringió la garantía constitucional aquí envuelta, disiento del fallo del Tribunal que sanciona lo anterior.

