EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* IRMA GONZÁLEZ DE DEMORA, acusada y apelante.

*Número:* CR-64-273 *Resuelto:* 23 de marzo de 1965

76

*Wilson F. Colberg* y *Juan Enrique Colón,* abogados de la apelante; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: La apelante fue declarada culpable por un jurado del delito de homicidio involuntario cometido mientras conducía un vehículo de motor. Los hechos ocurrieron en 14 de septiembre de 1963 en la Avenida Las Rosas de la urbanización Los Angeles, en jurisdicción de Carolina, Puerto Rico. En apelación señala los tres errores que a continuación discutimos.

(1) Que el Tribunal Superior erró al no concederle un nuevo juicio según solicitado por los fundamentos (a) y (b)-4 de la Regla 188 de las de Procedimiento Criminal. La solicitud de nuevo juicio se fundó en el descubrimiento de alegada nueva prueba y en una alegada conducta impropia del fiscal. En apoyo de su primer fundamento acompañó una declaración jurada de una testigo, declaración que obra en autos y la cual sería corroborativa de la prueba de defensa e impugnatoria de la prueba de cargo. En el juicio declararon cinco testigos de cargo y seis de defensa. En su memorandum en apoyo de la solicitud de nuevo juicio la acusada explicó que no pudo conseguir a esta testigo a tiempo para el juicio a pesar de buscarla en su residencia, en el "Club 22" de Santurce y en el "Castle Club" también de Santurce, porque la misma estaba en Nueva York. Discutida por las partes la moción de nuevo juicio, la misma fue declarada sin lugar por el Tribunal Superior. En su alegato la apelante reconoce que "Si bien es cierto que el testimonio de la Sra. Lanauze [la nueva testigo] impugnaría la prueba aducida durante el juicio por parte del Pueblo de Puerto Rico, y de acuerdo con *Pueblo* v. *Beltrán*, 73 D.P.R. 509 (1952), posiblemente no constituyese fundamento para declarar con lugar la moción de nuevo juicio, también es cierto que no pudo descubrirse con razonable diligencia antes del juicio que la presentación de dicha prueba resultaría ser factible, ya que los abogados de la defensa daban por un hecho la imposibilidad de localizar a la Sra. Lanauze y, sin duda, el haber presentado su testimonio hubiera producido un resultado diferente, lo cual de por sí hubiera justificado la concesión de un nuevo juicio."

■ Siendo la alegada nueva prueba acumulativa para la defensa e impugnatoria de la aducida durante el juicio por el Estado, el tribunal de instancia no cometió error al declarar sin lugar la moción de nuevo juicio. *Pueblo* v. *Morales*, 66 D.P.R. 10, 20 y autoridades allí citadas (1946); *Pueblo* v.

*Beltrán*, 73 D.P.R. 509, 519 (1952). Reiteradamente hemos sostenido que una solicitud de nuevo juicio fundada en el descubrimiento de nueva prueba va dirigida a la sana discreción del tribunal. *Pueblo* v. *Aponte*, 77 D.P.R. 917, 921 (1954); *Pueblo* v. *Pardo Toro*, 90 D.P.R. 635 (1964).

■ Respecto al segundo fundamento de la solicitud de nuevo juicio aduce la apelante que cuando el fiscal hacía su informe hizo referencia a la presencia allí de un señor calvo de Río Piedras de quien dijo que era un habla jurados profesional. Sobre el particular todo lo que el récord contiene es lo siguiente:

"DEFENSA: Antes de que regresara el jurado quisiéramos hacer un planteamiento para el récord. Es que queremos que conste en el récord que en el argumento de cierre del compañero fiscal se ha inyectado una referencia a un señor calvo de Río Piedras en el salón estando, habiendo conferenciado o estando en proceso de conferenciar o de hablar, o lo que fuera con miembros del jurado que estaban en sala. Quisiéramos específicamente de que constara en récord. No se objetó y es en este momento que el Ministerio Fiscal lo imputó, porque no quisimos confundir el ánimo del jurado un planteamiento que diera lugar a una mala interpretación, pero quisiéramos que constara en récord que es una inferencia que no tiene que ver con el caso y que pudiera ser perjudicial.

"HON. JUEZ: Cuál es el planteamiento; qué solicita el compañero?

"DEFENSA: Que se entre para el récord.

"HON. JUEZ: Está bien. El taquígrafo lo ha tomado y constará en autos. ¿Cuál es la solicitud?

"DEFENSA: Eso es todo.

"HON. JUEZ: Entonces no hay nada que resolver.

"DEFENSA: Es un planteamiento.

"HON. JUEZ: Hágase constar en los autos que el fiscal ha hecho esas manifestaciones y que la defensa entiende que esas manifestaciones, aunque no fueron objetadas por la defensa, eran irrelevantes y pueden influir en el ánimo del jurado perjudicialmente a la acusada. [*sic*]

"DEFENSA: Exacto.

"HON. JUEZ: No hay nada que resolver. No hay moción de de 'mistrial' ni disolución del jurado ni moción de nada." (T.E. págs. 241-242.)

Como puede verse dicho incidente no va más allá de un planteamiento vago hecho por la defensa, quién también reconoció no haber objetado las palabras del fiscal en su debido tiempo, ni las llevó al récord. Tampoco aparece de la tardía objeción de la defensa que el fiscal hubiese implicado interés específico alguno de la acusada en la gestión del aludido señor calvo. La referencia a las palabras "habla jurados profesional" se hace por primera vez en el alegato de apelación de la apelante y no fueron ni llevadas al récord ni planteadas formalmente durante el juicio. Como se ve de lo antes transcrito no se hizo moción alguna y el juez no tenía ante sí nada que resolver. Hemos leído toda la transcripción de evidencia que consta de 270 páginas. No creemos que esas palabras dichas por el fiscal en su informe fueran decisivas ni perjudicaran a la apelante sustancialmente, como lo requiere la Regla 188 (d).

 (2) En el segundo error se alega que el tribunal instruyó erróneamente al jurado al añadirle a la teoría del pueblo un elemento esencial que no constituía parte de dicha teoría. Al exponer su teoría el fiscal, en parte, se expresó como sigue: "Que según la prueba que nos proponemos ofrecer ese es un lugar donde siempre hay muchos niños; que ella corría a una velocidad más allá de la que la cordura y el buen juicio, la circunspección recomendaban y en violación de las reglas de tránsito vigentes en ese entonces." (T.E. pág. 6.) Al final del juicio, cuando el juez resumía la teoría del fiscal, al llegar a lo anteriormente citado, el juez dijo "que ese sitio generalmente está, hay muchos niños por ese sector y que eso era de conocimiento de la acusada, . . ." (T.E. pág. 246.) Es cierto que el fiscal, como puede verse, no dijo exactamente esas palabras pero era del cono-

cimiento del jurado que el juez no estaba leyendo ni citando textualmente al fiscal sino que estaba haciendo un resumen de lo allí dicho por el fiscal. Por entender que la prueba presentada era "de fácil recordación para los señores del jurado" la defensa y el fiscal estipularon que el juez no resumiese la evidencia ofrecida, a menos que algún jurado pidiese que se leyese algún testimonio. (T.E. pág. 247.) Además, el juez le hizo claro al jurado que "los informes no hacen prueba, sencillamente se trata de la forma en que los abogados, el señor fiscal representando al Estado y el compañero Colberg representando a la acusada, la forma en que éstos dos caballeros abogados interpretan y analizan la prueba que ha desfilado; pero que repito no hacen prueba en una u otra forma y ustedes son los que van a resolver real y efectivamente si la prueba del Ministerio Fiscal es suficiente y en última instancia resolverán sobre si esta acusada es inocente o culpable del delito que se le imputa." (T.E. pág. 243.) La defensa no hizo objeción alguna en el momento oportuno renunciando así a levantar en apelación errores en las instrucciones. *Pueblo* v. *Martínez Santiago*, 91 D.P.R. 879 (1965); *Pueblo* v. *del Valle*, 91 D.P.R. 174 (1964); *Pueblo* v. *Pinto Medina*, 90 D.P.R. 585 (1964); *Pueblo* v. *Rodríguez Correa*, 88 D.P.R. 653 (1963). Las partes no pidieron instrucciones especiales (T.E. pág. 258) y la defensa no hizo excepción alguna a las instrucciones del tribunal, al serle preguntado por el juez. (T.E. pág. 267.) Tomadas las instrucciones en conjunto y a la luz de toda la prueba que desfiló, no puede decirse que esas palabras del juez perjudicasen sustancialmente a la apelante.

(3) En el tercer error señalado se aduce que al día siguiente del tribunal dictar sentencia corrigió la misma añadiéndole a la sentencia la revocación de la licencia para conducir automóviles por un período de dos años por considerar el tribunal que eso era mandatorio en ley. Argumenta la apelante que aunque el Código Penal en su Art. 204, 33 L.P.

R.A. sec. 636, establece que "En casos de convicción por el delito de homicidio involuntario cometido por una persona al conducir un vehículo de motor, mediante el manejo de éste, el tribunal sentenciador, además, revocará al convicto su licencia para conducir vehículos de motor por un término no menor de un año," sin embargo esa disposición quedó derogada por la Ley Núm. 175 de 4 de mayo de 1949. Esta ley determinaba que el tribunal que entienda en el caso podrá decretar la permanente o temporal cancelación de la licencia para guiar vehículos de motor de cualquier persona que fuera declarada culpable de infracción al Art. 328 del Código Penal, o del delito de homicidio involuntario, cuando la muerte en esos casos hubiera sido causada por un vehículo de motor, *según estos se definen en la letra (b) del Art. 2 de la Ley Núm. 279 de 5 de abril de 1946*, Ley de Automóviles y Tránsito. Pero resulta que esa Ley Núm. 279 de 5 de abril de 1946 quedó derogada expresamente por la vigente Ley de Vehículos y Tránsito, Ley Núm. 141 de 20 de julio de 1960, y dicha ley vigente contiene una definición de "vehículo de motor" que es sustancialmente igual a la definición que de ese término contenía la derogada Ley Núm. 279 de 1946. Por ello hay que entender que al referirse a "vehículo de motor" la Ley Núm. 175 de 4 de mayo de 1949, que invoca la apelante, la intención de la ley es que ese término se refiere a los vehículos de motor según están definidos por la ley. De todas maneras, si la revocación de la licencia era mandatoria así tenía el juez que ordenarlo[1] y si por el contrario era potestativa, como alega la apelante, el juez en el uso de su discreción ordenó la revocación de la licencia. Al así hacerlo no abusó de su discreción y no tenemos motivos para revocarlo.

 Como hemos visto los errores señalados no fueron cometidos y luego de leer detenidamente toda la transcrip-

---

[1] Como se sabe, las sentencias erróneas pueden ser corregidas, *González* v. *Jefe Penitenciaría*, 90 D.P.R. 31 (1964); *Pueblo* v. *Lozano Díaz*, 88 D.P.R. 834 (1963); *Bozza* v. *U.S.*, 330 U.S. 160, 167 (1946); *Reyes* v. *U.S.*, 262 F.2d 801 (1959).

ción de evidencia concluimos que la prueba creída por el jurado justifica la convicción de la apelante. La penalidad que dispone el Código Penal, Art. 204, para los casos de homicidio involuntario cometidos al conducir un vehículo de motor consiste de un mínimo de seis meses de cárcel y un máximo de cinco años, y la revocación de la licencia por un término no menor de un año. 33 L.P.R.A. sec. 636. En este caso el tribunal sentenció a la apelante a ocho meses de cárcel y le revocó o suspendió la licencia por un término de dos años. Este Tribunal, en el ejercicio de su discreción va a modificar esa sentencia reduciendo la penalidad de cárcel a seis meses pero no alterará lo relativo a la revocación de la licencia. *Así modificada se confirmará la sentencia apelada.*